UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

LOS MANGOS, LLC, d/b/a Mango Café,

                                Plaintiff,

             -against-

JAMES PALMER, individually, and the
VILLAGE/TOWN OF MOUNT KISCO,
New York,

                                Defendants.

--------------------------------------------------------x

ORIGINAL

08 CIV. 7578

08 Civ.    (        )

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff LOS MANGOS, LLC, d/b/a Mango Café, by its attorney Jonathan

Lovett, for its complaint respectfully states:


### NATURE OF THE ACTION

1. This is an action for violations of Plaintiff's rights, committed by Defendants

while acting under color of the laws of the State of New York, as guaranteed by the First

Amendment to the United States Constitution, 42 U.S.C. §1983.


### JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.



## THE PARTIES

3. Plaintiff LOS MANGOS, LLC, d/b/a Mango Café (hereinafter "Mango"), is a New York limited liability company with offices for the conduct of business at 222 East Main Street, Mount Kisco, New York. For a number of years Mango has operated a cabaret at those premises pursuant to a "full cabaret" license as issued by the Village/Town of Mount Kisco (hereinafter alternatively the "Village"). Plaintiff is owned by Mauricio Arriaga (hereinafter "Arriaga"), an individual of Guatemalan national origin, who is a lawful permanent resident of the United States. As such Arriaga has, for a number of years, been an outspoken critic of the Village and its officials for their mistreatment of the many Guatemalan immigrants who live and/or work within the Village.

4. Defendant JAMES PALMER (hereinafter "Palmer"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the duly appointed Village Manager of the Village.

5. Defendant VILLAGE/TOWN OF MOUNT KISCO, New York (hereinafter "Village") is a municipal corporate subdivision of the State of New York duly existing pursuant to and in accordance with the laws of said State.

## THE FACTS

6. In June of 2007 Arriaga commenced a civil rights action in this Court [Arriaga v. Village of Mount Kisco, New York, et. al, 07 Civ. 06130 (KMK/MDF)], alleging

violations of his First Amendment rights by the Village and certain of its officials. A copy of the complaint in that action is annexed, incorporated, and made a part hereof.

7. Also in 2007, to Defendants' actual knowledge, Arriaga was: i) a publicly outspoken critic regarding the Village's responsibility for the death of Guatemalan immigrant Rene Perez who, while in dire need of medical treatment, was transported to and dumped on an isolated stretch of road by a Mt. Kisco police officer; and ii) the moving force behind the filing of a lawsuit in this Court on behalf of the Rene Perez' estate [Emiliano Perez, as Administrator of the Estate of Juan Rene Javier Perez, v. Town/Village of Mt. Kisco *et. al,.* 07 Civ. 8780 (CS)]. A copy of the complaint in that action is also annexed, incorporated and made a part hereof.

8. Subsequent to the filing of Arriaga, *supra*, in 2007 Plaintiff, acting through Arriaga, duly and timely applied to the Village and Palmer for a full cabaret license for the year 2008.

9. Instead of Defendants' issuance of that license as they have done as a matter of course in the past, they have refused to process the application for 2008 licensure, neither granting it nor denying it.

10. When Palmer was confronted about the refusal to issue that permit, and despite his plenary authority to issue full cabaret licenses under the Village's relevant code provisions, he refused to do so, advising Arriaga that he (Palmer) will consult with the Village Board about the application - - even though the Village Board has no responsibility under the Village Code for issuance of the full cabaret license.

11. Under the circumstances Defendants' refusal to issue the subject full cabaret license was/is motivated by an intent to retaliate against Plaintiff by reason of the First Amendment protected conduct as engaged in by Arriaga and referenced *supra*.

12. As a proximate result of Defendants' conduct Plaintiff has suffered pecuniary losses, impairment of its business operations, loss of patrons, impairment of its reputation, and has otherwise been damaged.

## AS AND FOR A CLAIM

13. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "12", inclusive.

14. Under the premises Defendants' retaliatory conduct violated Plaintiff's rights, on a third party standing basis, as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

WHEREFORE judgment is respectfully demanded:

    a.   Awarding as against Palmer such punitive damages as the jury may impose,

    b.   Awarding against both Defendants such compensatory damages as the jury may determine,

    c.   Awarding against both Defendants reasonable attorneys fees and costs, and,

    d.  Granting such other and further relief as to the Court seems just and

proper.

Dated: White Plains, N.Y.
       August 25, 2008

Jonathan Lovett (4854)
Attorney for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------

**ORIGINAL**

MAURICIO DE JESUS ARRIAGA,

07 Civ.  (    )

                                Plaintiff,

**07 CIV. 6130**

                -against-

**COMPLAINT**

VILLAGE/TOWN OF MOUNT
KISCO, New York, JOHN DOE #1,
JOHN DOE #2, JOHN DOE #3,
JOHN DOE #4, and JOHN DOE
#5, in their individual capacities,

**JUDGE ROBINSON**

**Jury Trial Demanded**

                                Defendants.

-------------------------------------------------------------x

        Plaintiff MAURICIO DE JESUS ARRIAGA, by his attorneys Lovett & Gould,

LLP, for his complaint respectfully states:

### NATURE OF THE ACTION

        1. This is an action for compensatory and punitive damages, proximately resulting

from Defendants' conduct, as jointly engaged in under color of the laws of the State of

New York, for violations of Plaintiff's rights as guaranteed by reason of the First and

Fourteenth Amendments to the United States Constitution, 42 U.S.C. §1983, and 42

U.S.C. §1981.

### JURISDICTION

        2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

1

## THE PARTIES

3. Plaintiff MAURICIO DE JESUS ARRIAGA, a brown-skinned Hispanic of Guatemalan national origin, is a permanent resident of the United States, a domiciliary of the State of New York, and a resident of the Northern Counties. At no time relevant to this complaint has Plaintiff been the owner and/or part owner of real property known as 104 Grove Street, Mount Kisco, New York.

4. Defendants JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 (hereinafter collectively referred to as "John Doe") are, upon information and belief officials of the Defendant Village/Town who, acting in concert and under color of the laws of the State of New York, ordered and/or directed the Defendant Village/Town's Building Inspector to prosecute Plaintiff as set forth *infra*. At such time during pre-trial discovery as the actual identities of John Doe are ascertained, Plaintiff will seek leave to substitute them in as party Defendants in their individual and personal capacities only.

5. Defendant VILLAGE/TOWN OF MOUNT KISCO, New York (hereinafter "Village"), is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of said State. In that connection the Village:

       i) For years has maintained an official practice and/or policy, motivated by official bigotry, of intentionally discriminating against members of the Village's substantial Latino community by reason of their national origin, ethnicity, race and/or color, and,

2

ii) Pursuant to that policy and/or practice and by reason of Plaintiff's
exercise of First Amendment protected speech as referenced *infra*,
falsely charged Plaintiff with forty-five duplicative counts of violating
the Village's so-called "Landlord Registry" law as also referenced
*infra*.

## THE FACTS

6. By Local Law #2-2004, adopted on September 20, 2004, the Village Board of
Trustees promulgated a so-called "Landlord Registry" law that, as intended, and as
applied:

a. Targets owners of multi-family residential dwellings
situated within the Village, because those owners predominantly rent to
Hispanics believed by the Defendants to be illegal immigrants, and
requires those owners to submit under penalty of perjury irrelevant
"registration" data to the Village,

b. Invidiously targets Hispanic renters (who Defendants presume to
be illegal immigrants) residing on and/or in such property by
unnecessarily subjecting them and their homes to on-site scrutiny by
Village officials empowered to prosecute code violations and in that
connection to have such renters evicted and/or ejected from their homes
supposedly because of their landlord's failure to abide by the Landlord
Registry law,

c. Enables the Building Inspector and/or the so-called "Landlord Registry

3

Inspector" and/or the police (under the guise of inspecting such property

to insure that the sworn, albeit irrelevant information as provided in the

"registration" is accurate) to enter upon that property - - without benefit

of a warrant, probable cause and/or a reasonable suspicion - - for the

purpose of intimidating the renters and the owners, and

d. Dissuades Hispanics from moving into the Village and/or coerces

their departure from such rental properties and the Village.

7. On May 13, 2007, Plaintiff was accurately quoted in The Journal News, a
daily-published newspaper sold/distributed *inter alia* within the Village, expressing (in
connection with a news story regarding the murder of an immigrant from Guatemala who
died on April 28, 2007) his opinion with respect to the registration form required by the
"Landlord Registry" law:

"I said to them: 'This is not Cuba. This is America. . .Their

[Village officials'] angle is to scare the Latino community to go to

another town".

8. Admittedly and expressly motivated to retaliate against Plaintiff by reason of
his opinion as referenced in the preceding paragraph "7" and by reason of Plaintiff's
ethnicity, national origin and/or skin color Defendants commenced a criminal prosecution
of Plaintiff alleging forty-five separate violations of the Landlord Registry law with
respect to 104 Grove Street in the Village - - one claimed violation for each of forty-five
consecutive days - - even though that law does not provide that each day a landlord fails
to register his property constitutes a separate violation of the law. By reason of that

4

patently unlawful duplicative series of criminal charges Defendants are - - for the calculated objective of punishing Plaintiff for his expression of opinion, targeting him by reason of his skin color, ethnicity and/or national origin and publicly intimidating the Latino community in the Village - - seeking fines from Plaintiff in the amount of $11,250 to $22,500 and/or imprisonment for up to six hundred seventy-five days.

9. As a proximate result of Defendants' conduct Plaintiff has been forced to suffer: punishment for exercising his right of free speech; chilling of his right to free speech; pecuniary losses in connection with his criminal defense; public humiliation; public embarrassment; shame; emotional upset; anxiety; punishment by reason of his ethnicity, color and/or national origin; obligatory criminal court appearance(s); and has otherwise been rendered sick and sore.

## AS AND FOR A FIRST CLAIM

10. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "9", inclusive.

11. Under the premises Defendants violated Plaintiff's rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A SECOND CLAIM

12. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "9", inclusive.

13. Under the premises Defendants violated Plaintiff's right, as guaranteed by the Equal Protection Clause of the United States Constitution, to be free from selective prosecution, 42 U.S.C. §1983.

## AS AND FOR A THIRD CLAIM

14. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "9", inclusive.

15. Under the premises Defendants' conduct, motivated in whole or in substantial part by reason of Plaintiff's national origin and/or ethnicity and/or color and/or race, violated Plaintiff's rights as guaranteed by 42 U.S.C. §1981.

## AS AND FOR A FOURTH CLAIM

16. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "9", inclusive.

17. Under the premises the Landlord Registry law, by reason of its invidious discriminatory intent and as applied, is unconstitutional.

WHEREFORE a judgment is respectfully demanded:

    a. Awarding as against each Defendant such compensatory damages and the jury may determine,

    b. Awarding against the individually named Defendants such punitive damages as the jury may impose,

    c. Declaring the "Landlord Registry" law to be unconstitutional and permanently enjoining Defendants from enforcing it,

d.  Awarding reasonable attorney's fees and costs, and,

e.  Granting such other and further relief as to the Court seems just and

proper.

Dated: White Plains, N.Y.
        June 26, 2007

LOVETT & GOULD, LLP
By: _____
        Jonathan Lovett (4854)
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401

7

**United States District Court**
Southern District of New York
Office of the Clerk
U.S. Courthouse
300 Quarropas Street, White Plains, N.Y. 10601



-----------------------------------X
DeJesus

                                        NOTICE OF REASSIGNMENT

            -V-

                                    7:07 cv. 6130(KMK)(LMS)

Mount Kisco
-----------------------------------X


        Pursuant to the memorandum of the Case Processing Assistant
the above entitled action is reassigned to the WP calendar of


        JUDGE: Kenneth M. Karas

        All future documents submitted in this action shall bear the
assigned judge's initials after the case number.  If this case is
assigned to the Electronic Case Filing (ECF) system, documents
must be submitted electronically, and shall also bear the
notation "ECF CASE" under the docket number.

        The attorney(s) for the plaintiff(s) are requested to serve
a copy of the Notice of Reassignment on all defendants.


                            J. Michael McMahon, CLERK

Dated:9/18/07
                        by: _____
                                Deputy Clerk


CC:  Attorneys of Record


i:forms\assign\reass.wpd
WP REASSIGNMENT FORM


S

                    Revised: September 9, 2004

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
EMILIANO PEREZ, as Administrator of the
Estate of JUAN RENE JAVIER PEREZ,

                    Plaintiff,

          -against-

TOWN/VILLAGE OF MT. KISCO,
New York, and GEORGE BUBARIS,
individually,

                    Defendants.
------------------------------------------------------------x

07 Civ. 8780 (CLB)


**FIRST AMENDED
COMPLAINT**


**Jury Trial Demanded**

Plaintiff EMILIANO PEREZ, as Administrator of the Estate of JUAN RENE

JAVIER PEREZ, by his attorneys Lovett & Gould, LLP, for his complaint respectfully

states:

## NATURE OF THE ACTION

1. This is an action for compensatory and punitive damages, proximately resulting

from conduct jointly engaged in by Defendants while acting under color of the laws of

the State of New York, for the violation of Plaintiff's rights as guaranteed by the Fourth

and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §1983.

## JURISDICTION

2. The Court's jurisdiction is invoked in accordance with 28 U.S.C. §§1331, 1343.

Plaintiff's state law claim against George Bubaris for wrongful death is interposed

pursuant to the Court's supplemental jurisdiction, 28 U.S.C. §1367. In connection with

the filing of this action Plaintiff served upon the Town/Village of Mt. Kisco a notice of

claim for wrongful death as committed by Bubaris. For lack of any competent witness who could testify as to out-of-pocket losses sustained by the Decedent a 50-h hearing was waived. More than thirty days from the date of service of the notice of claim have passed and this state law claim remains unadjusted and unresolved..

### THE PARTIES

3. Plaintiff EMILIANO PEREZ, as Administrator of the Estate of JUAN RENE JAVIER PEREZ (hereinafter "Rene Perez"), was issued Letters of Administration by the Surrogate's Court, County of Westchester on October 10, 2007. Decedent was the victim of an April 28, 2007, homicide committed by Defendant Bubaris.

4. Defendant TOWN/VILLAGE OF MT. KISCO, New York (hereinafter "Mt. Kisco"), is also a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of said State.

5. Defendant GEORGE BUBARIS (hereinafter "Bubaris"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was a Police Officer employed by Mt. Kisco. With respect to the events set forth *infra* Bubaris was on duty and in all respects acting under color of the laws of the State of New York. Prior to the events of April 28, 2007, as set forth *infra*, Bubaris had made public his belief that Rene Perez was a "bad" person whom he (Bubaris) did not like.

### THE FACTS

6. Mt. Kisco has for a substantial period of time established and maintained a practice, policy and custom quaintly referred to in police parlance as "border dumping".

2

7. Border dumping, as routinely practiced by Mt. Kisco by means of its police officers, intentionally targets indigent male Hispanics of Guatemalan national origin (hereinafter the "target") who members of the police department believe should not be permitted to enter into and/or remain within their municipality.

8. As routinely applied by the police in Mt. Kisco, officers assigned to patrol duties:

      a. Select a target with respect to whom they have developed, by reason of prior interactions, personal animus motivated in whole and/or substantial respect by reason of the target's: national origin; skin color; and/or ethnicity,

      b. Involuntarily take the target into police custody without lawful cause, much less probable and/or arguable probable cause,

      c. Force the target to enter into and remain within a police vehicle,

      d. Without authority or permission of the target, transport the target across the border between Mt. Kisco and the Town of Bedford,

      e. Dump the target and/or his body in the Town of Bedford, and

      f. Return to their own jurisdiction without officially reporting their conduct.

9. On April 28, 2007, at or about 11:30 P.M. Bubaris encountered and targeted Rene Perez (for the same reasons referenced in paragraph "8", *supra*) for an act of border dumping. In that connection Rene Perez was:

      a. Forcefully struck by Bubaris with a metal police "baton" and/or a "PR-24" (nightstick) in the lower abdominal area causing him serious

physical injury and massive internal bleeding,

b. Involuntarily taken into custody by Bubaris without cause much less probable and/or arguable probable cause, thereafter,

c. Forced into Bubaris' assigned police vehicle,

d. Without authority or permission transported out of Mt. Kisco to a desolate location just inside the geographic boundary of the Town of Bedford (near, but just outside the geographic boundary of the Town of North Castle), and, although seriously injured due to the blow to his abdomen and in dire need of emergency medical attention,

e. Intentionally dumped by Bubaris on the shoulder of Byram Lake Road.

10. Shortly thereafter his body was discovered by passers-by who called for emergency medical assistance. As a result Rene Perez, then still conscious and aware of his circumstances, was removed to a local hospital where several hours thereafter he died as a result of the internal bleeding. The death has been ruled by the Westchester County Medical Examiner to be a "homicide".

11. In the morning hours of April 29, 2007, after Bubaris learned of Rene Perez' death, Bubaris admitted to at least one sworn member of the Mt. Kisco Police Department that he had decided the night before to go "hunting" for Rene Perez, found him, transported him in his police vehicle, and dumped him on Byram Lake Road.

12. Thereafter by Indictment #07-0679 Bubaris was charged by a Westchester County Grand Jury with one count of Manslaughter in the Second Degree [New York Penal Law §125.15), two counts of Official Misconduct (New York Penal Law §195.00),

4

and one count of Unlawful Imprisonment in the First Degree (New York Penal Law §135.10).

## AS AND FOR A FIRST CLAIM
## AGAINST BUBARIS

13. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "12", inclusive.

14. Bubaris' homicide of Rene Perez violated Decedent's right to Due Process as guaranteed by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A SECOND CLAIM
## AGAINST BUBARIS

15. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "12", inclusive.

16. Bubaris' intentional and/or reckless and/or negligent use of excessive force upon Rene Perez, resulting in massive internal bleeding, violated Decedent's rights as guaranteed by the Fourth Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A THIRD CLAIM
## AGAINST BUBARIS

17. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "12", inclusive.

18. Bubaris' targeting of Rene Perez by reason of his skin color, ethnicity, and/or national origin violated Plaintiff's right to Equal Protection as guaranteed by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A FOURTH CLAIM
## AGAINST BUBARIS

19. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "12", inclusive.

20. Bubaris' border-dumping of Rene Perez violated Decedent's right to intra-state travel as guaranteed by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A FIFTH CLAIM
## AGAINST BUBARIS AND MT. KISCO

21. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "12", inclusive.

22. The homicide of Rene Perez by Bubaris constitutes a wrongful death actionable for damages under the common law of the State of New York.

## AS AND FOR A SIXTH CLAIM
## AGAINST MT. KISCO

23. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "12", inclusive.

6

24. Mt. Kisco's policy, practice, and custom of border-dumping pursuant to which Rene Perez was removed from Mt. Kisco on April 28, 2007, and discarded in Bedford, violated Decedent's right to intra-state travel as guaranteed by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

WHEREFORE a judgment is respectfully requested:

    a.  Awarding as against Bubaris such compensatory and punitive damages as the jury may impose,

    b.  Awarding as against Bedford such compensatory damages as the jury may determine,

    c.  Awarding as against all Defendants reasonable attorney's fees and costs,

    d.  Declaring unconstitutional and permanently enjoining border-dumping by Mt. Kisco, and,

    e.  Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
       December 18, 2007

                      LOVETT & GOULD, LLP
                      By:
                         Jonathan Lovett (4854)
                      Attorneys for Plaintiff
                      222 Bloomingdale Road
                      White Plains, N.Y. 10605
                      914-428-8401

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
IN THE MATTER OF REASSIGNMENT

OF CIVIL CASES FROM                                NOTICE OF REASSIGNMENT

CHARLES L. BRIEANT, U.S.D.J.

TO

CATHY SEIBEL, U.S.D.J.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Pursuant to the memorandum of the Case Processing Assistant, all pending civil

cases assigned to Judge Charles L. Brieant are reassigned to the calendar of the Honorable Cathy

Seibel, U.S.D.J.  See the attached memorandum for a list of reassigned cases.

All future documents submitted in these actions shall bear the newly assigned judge's

initials (CS) after the case number [eg. 7:00-CV-00000 (CS)].

The designated Magistrate Judge in each case shall remain the same.

Judge Seibel will be sitting in the U.S. Courthouse in White Plains, NY.

Questions may be directed to Judge Seibel's Courtroom Deputy Clerk, Ms. Alice Cama,

at (914)390-4077.

The attorney(s) for the plaintiff(s) are requested to serve a copy of this Notice of

Reassignment on all defendants.


Dated: August 5, 2008


J. Michael McMahon, CLERK


By: _____
Robert Rogers, Deputy-in-Charge


cc: Attorneys of Record

i:\FORMS\ASSIGN\Reass-Global.wpd